IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRADEHILL, INC., | No. C-12-1082 MMC |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION; DENYING AS MOOT DEFENDANTS' ALTERNATIVE MOTION TO DISMISS; VACATING HEARING** |
| v. | |
| DWOLLA, INC., et al., | |
| Defendants. | |

Before the Court is defendants Dwolla, Inc. ("Dwolla"), Ben Milne ("Milne"), and Charise Flynn's ("Flynn") "Motion to Compel Arbitration or, in the Alternative, to Dismiss for Lack of Personal Jurisdiction, Failure to State a Claim, and Improper Venue," filed April 9, 2012. Plaintiff TradeHill, Inc. ("TradeHill") has filed opposition, to which defendants have replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court deems the matter suitable for determination on the parties' respective written submissions, VACATES the hearing scheduled for June 1, 2012, and rules as follows.

**BACKGROUND**

In the operative complaint, the First Amended Complaint ("FAC"), TradeHill alleges that, until it "shut down operations on February 13, 2012," it was "one of the world's leading resources for Bitcoin, a virtual currency." (See FAC ¶¶ 8, 52.) TradeHill also alleges that,

in June 2011, it entered into a contract with Dwolla, under which agreement it "would direct its customers to Dwolla for purchases of TradeHill services." (See FAC ¶ 14.) TradeHill further alleges that it entered into said agreement because of Dwolla's "very low transaction fee" and because Dwolla had "heavily advertised that it did not 'chargeback.'" (See id.) A "chargeback," according to TradeHill, occurs when "a customer complains to his financial institution that he did not receive a product or service as promised from a merchant and files appropriate paperwork (such [as] an affidavit)," and the transfer of the customer's payment to the merchant is then "reversed and the customer's funds [ ] returned." (See FAC ¶ 15.)

During the course of its relationship with Dwolla, some of TradeHill's customers allegedly complained to their financial institutions that they had been charged for TradeHill products they did not receive, after which the charges were reversed. (See FAC ¶¶ 21, 22.) TradeHill alleges that, in light of Dwolla's advertised "no chargeback policy," which policy TradeHill had "confirmed" with Dwolla's "customer services representatives" both before it entered into its agreement with Dwolla and during the course of the agreement, "Dwolla should have been responsible for absorbing the loss of these chargebacks," but instead, "without notice," withheld payments from TradeHill in the amount of $164,878.72 corresponding to reversed charges. (See FAC ¶¶ 16, 22-23, 28-31.)

Based on the above allegations, TradeHill's FAC asserts a federal claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c), based on alleged wire fraud and bank fraud, and also asserts eight causes of action arising under state law, specifically, "False Advertising," "Breach of Contract," "Intentional Misrepresentation," "Negligent Misrepresentation," "Concealment," "Restitution after Rescission," "Conversion," and "Gross Negligence."

TradeHill acknowledges in the FAC that the written agreement governing the contractual relationship between TradeHill and Dwolla contains "an arbitration provision requiring all disputes between Dwolla and its customers be settled with the assistance of an arbitration firm in Minnesota." (See FAC ¶ 33.) TradeHill alleges, however, that the

2

arbitration provision is "unconscionable" and that Dwolla "has waived [the] arbitration provision"; consequently, TradeHill asserts, it can "enforce its rights" in federal court. (See id.)

**DISCUSSION**

By the instant motion, defendants seek an order compelling arbitration of TradeHill's claims, pursuant to the arbitration clause set forth in the parties' written agreement.[1]

Under the Federal Arbitration Act ("FAA"), "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." See 9 U.S.C. § 3.

The subject arbitration clause, titled "Arbitration" and contained in the "Dwolla User Agreement,"[2] reads as follows:

> In the event a dispute shall arise between the parties to this [contract, lease, etc.], it is hereby agreed that the dispute shall be referred to USAM Minneapolis, Minnesota St. Paul, MN for arbitration in accordance with the applicable United States Arbitration and Mediation Rules of Arbitration. The arbitrator's decision shall be final and legally binding and judgment may be entered thereon.
>
> Each party shall be responsible for its share of the arbitration fees in accordance with the applicable Rules of Arbitration. In the event a party fails to proceed with arbitration, unsuccessfully challenges the arbitrator's award, or fails to comply with

---

[1] In the alternative, the motion seeks dismissal of the initial complaint for lack of personal jurisdiction, failure to state a claim, and improper venue. After the motion was filed, however, TradeHill filed the FAC. In opposition to the instant motion, TradeHill argues, and defendants have not disagreed, that defendants' motion, to the extent it seeks dismissal of the initial complaint, is moot. TradeHill's point is well-taken, and, accordingly, the motion to dismiss will be denied as moot. See Bullen v. De Bretteville, 239 F.2d 824, 833 (9th Cir. 1956) (holding "an amended pleading supersedes the original, the latter being treated thereafter as non-existent"), cert. denied, 353 U.S. 947 (1957).

[2] Both parties refer to said agreement as the "Terms of Service" (see Defs.' Mot. to Compel Ex. 1 ("Milne Decl.") ¶ 7; Pl.'s Opp. Ex. 1 ("Kenna Decl.") ¶ 3), although that title does not appear therein.

>the arbitrator's award, the other party is entitled to costs of suit, including a reasonable attorney's fee for having to compel arbitration or defend or enforce the award.
>
>THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION, WHICH AFFECTS YOUR LEGAL RIGHTS AND MAY BE ENFORCED BY THE PARTIES.

(See Milne Decl. Ex. A at 6 (brackets in original); FAC Ex. 1.)

Defendants argue, and TradeHill has not disputed, that all of TradeHill's claims fall within the scope of the above-quoted arbitration clause. The Court agrees. The broad language of the arbitration clause covers any "dispute" between the parties to the User Agreement (see id.), specifically, TradeHill and Dwolla, and each of TradeHill's claims arises from a dispute between TradeHill and Dwolla regarding Dwolla's chargeback practices. Further, because TradeHill's claims against the individual defendants, Milne and Flynn, are wholly based on actions allegedly taken in the course of said individuals' employment with Dwolla (see, e.g., FAC ¶¶ 4, 11, 12), TradeHill's claims against Milne and Flynn likewise are covered by the arbitration agreement. See Letizia v. Prudential Bache Securities, Inc., 802 F.2d 1185, 1187-88 (9th Cir. 1986) (holding "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles"; finding, where plaintiff and securities brokerage firm agreed to arbitrate "any dispute arising out of or relating to [the plaintiff's] securities account," plaintiff's claims against employees of brokerage firm fell within scope of arbitration agreement where said claims "related to [the employees'] handling of [the plaintiff's] securities account").

Nonetheless, TradeHill argues, it should not be compelled to arbitrate its claims against defendants. Specifically, TradeHill argues, the arbitration clause cannot be enforced because it is unconscionable and because it requires the parties to split the arbitration fees; TradeHill further argues that, irrespective of enforceability, defendants have waived their right to rely on the arbitration clause.

The Court considers each of TradeHill's arguments in turn.

//
//

**A. Unconscionability**

"The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1748 (2011). Nonetheless, an arbitration agreement may be invalidated by "generally applicable contract defenses," such as "unconscionability." See id. at 1746. Here, TradeHill relies on the defense of unconscionability as recognized under California law.

"Under California law, courts may refuse to enforce any contract found to have been unconscionable at the time it was made, or may limit the application of any unconscionable clause." Id. (internal quotation and citation omitted). "A finding of unconscionability requires a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." Id. (internal quotation and citation omitted).

With respect to the latter of the two elements, TradeHill argues the subject arbitration clause is substantively unconscionable because, when read in connection with other provisions of the User Agreement, it produces a "one-sided" result; in particular, as TradeHill interprets the clause, it does not require Dwolla to submit any claim against its customers to arbitration. See, e.g., Armendariz v. Foundation Health Pyschcare Servs., Inc., 24 Cal. 4th 83, 120-21 (2000) (finding arbitration clause "unconscionabl[y] one-sided," where clause required employee but not employer to arbitrate claims). As discussed below, the Court is not persuaded.

While acknowledging the arbitration clause, on its face, requires both Dwolla and TradeHill to arbitrate all disputes they have against each other, TradeHill argues that, as a practical matter, Dwolla would never have a claim against TradeHill. In support thereof, TradeHill relies on provisions in the User Agreement that require Dwolla's customers, e.g., TradeHill, to provide "credit card information" to Dwolla (see Milne Decl. Ex. A at 3-4), and allow Dwolla to "charge the credit [card] on file" for any "fees or fines [the customer's] Dwolla account balance does not cover" (see id. Ex. A at 5).

1 TradeHill's argument necessarily assumes that the only type of dispute Dwolla would ever have with a customer would be a dispute involving Dwolla's collection of a fee or fine. Such assumption overlooks, however, the scope of potential disputes between contracting parties, as well as the scope of coverage attributed by law to broad arbitration clauses. See, e.g., Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 720, 723-25 (9th Cir. 1999) (holding claims alleging antitrust violations, misappropriation of trade secrets, and defamation fell within scope of arbitration clause, where clause provided for arbitration of "[a]ll disputes arising in connection with this Agreement"). Indeed, here, the User Agreement itself identifies at least one other type of dispute, and, significantly, one that would not be resolved by the provision pertaining to the collection of fees and fines. Specifically, the User Agreement provides: "You agree that you will not at any time attempt to falsify your identity or defraud Dwolla or other Dwolla users in any way. You agree in the event you are found to be defrauding or falsify[ing] your identity to Dwolla or other Dwolla users, legal action will be taken against you." (See Milne Decl. Ex. A at 1.) In the event that Dwolla were to assert it had incurred damages by reason of any fraud or falsification by a customer, Dwolla would be required, under the terms of the arbitration clause, to seek relief in the identified arbitral forum.

Even assuming, arguendo, the only type of dispute Dwolla would ever have with a customer would be a dispute involving Dwolla's collection of a fee or fine, the provisions on which TradeHill relies do not render the arbitration clause one-sided. As Dwolla correctly observes, if the credit card on file were subsequently cancelled, or the amount of credit available thereon were insufficient to cover the fee or fine, Dwolla would be required, under the terms of the arbitration clause, to bring any collection action in an arbitral forum.

In sum, TradeHill has failed to show the arbitration clause only applies to Dwolla's customers.

//
//
//

Accordingly, the Court finds TradeHill has failed to meet its burden to show the arbitration clause is substantively unconscionable.[3] Under such circumstances, to the extent TradeHill's challenge is based on grounds of unconscionability, such challenge fails. See Kilgore v. Keybank, National Assn., 673 F.3d 947, 954 (9th Cir. 2012) (holding party "challenging the enforceability of the arbitration clause" has burden to establish unenforceability).

**B. Fee Splitting**

TradeHill next argues the arbitration clause is unenforceable because it requires the parties to split the arbitration fees and "there is no way [TradeHill] will be able to afford any fee-splitting of the arbitrator fees." (See Pl.'s Opp. at 6:15-16.) Again, the Court finds TradeHill's argument unpersuasive.

At the outset, the Court observes that the arbitration clause does not itself require the parties to split the arbitration fees. Rather, as set forth above, it provides that each party is "responsible for its share of the arbitration fees in accordance with the applicable Rules of Arbitration," which rules are identified as the "United States Arbitration and Mediation Rules of Arbitration." (See Milne Decl. Ex. A at 6.) TradeHill has not provided a copy of those rules, nor does TradeHill even assert they require fee splitting. Further, even assuming, arguendo, the applicable Rules of Arbitration require fee splitting in all instances, the Court finds TradeHill has failed to show any such requirement renders the arbitration clause unenforceable.

First, to the extent TradeHill argues that, under California law, an arbitration clause is per se unenforceable when it requires fee splitting, TradeHill is incorrect. Indeed, as defendants correctly observe, the default rule under California law is that the parties must split the fees of the arbitrator on a pro rata basis. Specifically, "[u]nless the arbitration agreement otherwise provides or the parties to the arbitration otherwise agree, each party

---

[3] In light of this finding, the Court does not address TradeHill's argument that the arbitration clause is procedurally unconscionable. See Armendariz, 24 Cal. 4th at 114 (adhering to "prevailing view" that both "procedural and substantive unconscionability" must be shown to render contract unenforceable).

7

to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including counsel fees or witness fees or other expenses incurred by a party for his own benefit." See Cal. Civ. Proc. Code § 1284.2. Consequently, even assuming the subject arbitration clause in fact requires the parties to split the fees, any such provision cannot be said to be contrary to California policy; rather, such a provision would fully comport with California policy as set forth in the above-quoted statute.[4]

Second, to the extent TradeHill seeks to avoid enforcement of the arbitration clause by demonstrating an inability to pay arbitration fees, TradeHill's argument fares no better. "[W]here, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration is prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." Green Tree Financial Corp.-Alabama. v. Randolph, 531 U.S. 79, 92 (2000). TradeHill has offered no evidence to establish the amount of arbitration fees it is likely to incur, let alone that it lacks the ability to pay fees in such amount. The conclusory assertion of TradeHill's owner that it "will be unable to afford the thousands of dollars in arbitration fees" (see Kenna Decl. ¶ 6) is insufficient, particularly given that TradeHill fails to explain why it can afford the expenses associated with a potentially lengthy federal court proceeding, but cannot afford the expenses associated with arbitration, which, as characterized by the Supreme Court, is a "streamlined proceeding." See AT&T Mobility LLC, 131 S. Ct. at 1748.

Accordingly, irrespective of whether the arbitration clause requires the parties to split the arbitration fees, TradeHill has failed to show it is unenforceable.

---

[4]TradeHill's reliance on Armendariz, 24 Cal. 4th 83, is unavailing. In Armendariz, the California Supreme Court interpreted the Fair Housing and Employment Act ("FEHA") as "implicitly" requiring that, where an employer requires an employee to enter into an agreement promising to arbitrate any claim arising under FEHA, the employer must "bear the arbitration forum costs." See id. at 112-13. Accordingly, the Supreme Court found that where an arbitration clause was silent as to the parties' responsibility to pay the arbitration fees and the plaintiff sought relief under FEHA, said implicit provision, rather than the "default provisions of section 1284.2," applied. See id. The instant action does not involve a claim under FEHA or any similar statute.

**C. Waiver**

Lastly, TradeHill contends defendants have waived their contractual right to arbitrate.

"Waiver of a contractual right to arbitration is not favored." Fisher v. A.G. Becker Paribas Inc., 719 F.2d 691, 694 (9th Cir. 1986). Accordingly, "any party arguing waiver of arbitration bears a heavy burden of proof." See id. (internal quotation and citation omitted). Specifically, "[a] party seeking to prove waiver of a right to arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." See id.

Here, the sole evidence offered by TradeHill in support of its argument that defendants have waived their right to arbitrate is set forth in a declaration by TradeHill's owner:

> I and other representatives of TradeHill attempted to communicate with Dwolla multiple times from August 2011 through February 2012 to resolve our dispute. In February 2012, an attorney sent Dwolla a demand letter. Dwolla never responded substantively to any communication, its customer service representatives falsely represented that Dwolla's corporate officers will personally get in touch with TradeHill, and Dwolla never suggested that this matter be sent to arbitration.

(See Kenna Decl. ¶ 7.)

Essentially, TradeHill offers evidence to show that Dwolla declined to respond to TradeHill's requests to resolve the parties' dispute informally. TradeHill cites no authority, and the Court has found none, suggesting a declination to respond to one or more requests of such nature is inconsistent with an intent to exercise one's right to compel arbitration of the dispute. Moreover, even if such authority did exist, TradeHill offers no evidence, nor has it otherwise shown, that Dwolla's failure to respond to any such request(s) prejudiced TradeHill in any manner. See Fisher, 791 F. 2d at 694 ("More is required than action inconsistent with an arbitration provision; prejudice to the opposing party must also be shown.") (internal quotation and citation omitted).

//

9

Accordingly, the Court finds TradeHill has failed to meet its burden to establish defendants waived their contractual right to arbitration.

## CONCLUSION

For the reasons stated above:

1. To the extent defendants seek an order compelling TradeHill to arbitrate its claims, the motion is hereby GRANTED.

2. To the extent defendants seeks dismissal of the initial complaint for lack of personal jurisdiction, failure to state a claim, or lack of proper venue, the motion is hereby DENIED as moot.

**IT IS SO ORDERED.**

Dated:  May 9, 2012

MAXINE M. CHESNEY
United States District Judge